Case number 15-2236 Marikia Lyda et al. v. City of Detroit MI et al. Or arguments not to exceed 15 minutes per side. Mr. Mark Fancher for the appellants. Good morning. May it please the court, my name is Mark Fancher. I'm with the American Civil Liberties Union of Michigan and the ACLU of Michigan along with the law firm of Edwards and Jennings and other concerned law firms and organizations represent the appellants in this matter. This case is one that has grave potential consequences for tens of thousands of people, many of them poor, many of them sick and one of the great difficulties that they have faced is a misunderstanding both in the public and in the courts of exactly what their interests are. They are not asking that they be given special privileges in terms of payment. They're not asking for free water. They're not asking for anything. All that they're asking for is fairness and that's something that has been denied them. So did they seek damages in this case? They seek declaratory and injunctive relief. I'm just curious to make sure the case is in moot. So they're getting water now, your clients, the water was turned on, am I right about that? In some cases, no, your honor. And this is styled as a class action. The crisis continues. So when it comes to the name plainness, has the water been turned on? In some cases, in some cases not as far as I know, but I don't know specifically, your honor. But I do know that the claims that they brought to the court present issues which are still active and viable claims for the class members that they represent. I'm just trying to figure that out. That's all I want to know. So just maybe this is one of those things, because I don't think the city has pushed this point, so it's not your responsibility that you didn't think to have all these answers. But it would be relevant to me to know whether the class members have the water, I mean, excuse me, the named class representatives have the water turned on. And what is it that they're still seeking relief for? Because if I will – I'll just tell you my theory is that if all you're worried about is that they might turn the water off again, that's a lion's case, and that's not enough to solve the mootness problem. And the second thing I'm curious about is whether the nature of the water plan in terms of how it works and what you do with people that can't pay has changed since the lawsuit was filed. And so those are some of the issues I have. And if you have answers, great. If not, we can ask for briefing later. The primary response that I have, Your Honor, is that this case is before the court on a motion based on Rule 12b-6, the sufficiency of the complaint. And we are prepared to address the issues regarding that. And as to that question, as to whether the complaint was properly pled and whether there was error below, we say that it was properly pled because it explains in appropriate detail the problems that have been experienced by the plaintiffs or by the appellants. They've been denied fairness in two respects, one with respect to due process. And the bankruptcy court below identified Paragraph 124 as the primary deficiency in that court's view of the complaint with respect to due process. The court described it as a kitchen sink list of legal conclusions. In fact, although it lists a number of legal conclusions, in other parts of the complaint, the facts backing up those conclusions are specified in great detail. Specifically, with respect to the allegation that there's been a failure to provide notice and opportunities for hearings before shutoffs in paragraphs 59 through 61, Joanne Jackson, over a $340 dispute and with a husband who's a dialysis patient and living with grandchildren, was threatened with immediate shutoff on the day of she was threatened with shutoff of her water. She did not pay water in that day. What's your response to the Section 904 point? Section 904 is a separate issue, we believe, because we're talking about a constitutional right to due process. We claim that the 14th Amendment overrides Section 904 and any effect that it might have on her due process claims. But doesn't 904, by its plain language, prohibit the granting of the very relief that you seek? I know you say you believe the 14th Amendment overrides, but don't we have to look at the textual language of the statute? We believe that the bankruptcy court got it correct, and they did. That the federal constitution is superior to any congressional enactment, any congressional statute. Where's that in the language? How do you tease that out of 904? Where's the language that draws that distinction in 904? Section 904, notwithstanding its language, is subordinate to the United States Constitution. What was the problem with the initial Supreme Court case? I think it's Addison which declared the prior version of municipal bankruptcy provisions unconstitutional. It was based upon the federalism concerns. The Supreme Court has spoken, have they not? That federalism must be respected in this area of municipal bankruptcy? Your Honor, we stand firm in the contention that the Constitution How do you reconcile Addison with your argument that the Constitution overrides the anti-injunctive relief provision of 904 when the Supreme Court has already said that federalism concerns trump are paramount, I guess, in the first case. Well, as to all issues, constitutional and non-constitutional You have two constitutional concerns, federalism, equal protection, due process. The two constitutional provisions are in conflict. The Supreme Court's already ruled as to federalism. As to all issues, constitutional and non-constitutional, Section 904 itself says that the bankruptcy court can assume jurisdiction in cases where there's an executory contract, in cases where the debtor has consented to jurisdiction, and in cases where non-core issues are related to the bankruptcy. We say that as to all of those things, both the constitutional and the non-constitutional issues are addressed. Because of consent? So you said consent. Where's the consent here? How did the city consent to this? When the city filed for bankruptcy in its second amended plan of adjustment, there's language in there that talks specifically about the kinds of issues that are addressed in this litigation in terms of rate structures and affordability and other things that we talk about. And it is clear from that language that they are consenting to those kinds of issues being addressed. Certainly, the issues that are raised in all of the claims I mean, is this an inference or is it just straight up language that says we consent to the bankruptcy court's authority to decide when the water is shut off or not shut off? No, it does not say it in those words. It does say that it does consent to the bankruptcy court considering issues of the kind that are raised in this litigation. It's just another way of saying they filed for bankruptcy. I mean, I just think you're saying it's a constructive consent when they file for bankruptcy. Because of course they're going to mention lots of issues related to bankruptcy that when one thing is related to another, it's going to relate to this issue. With respect to executory contract, this is the agreements that are entered into between water customers and the utility are executory contracts. They are subject to bankruptcy. All of these issues are related to the bankruptcy, and the bankruptcy court has jurisdiction over them. And that is essentially the case. And in terms of due process Your main argument is consent? Is that the main argument? All three. Executory contract, consent, and related to is non-court. So you're arguing implied consent. There's no express consent here, is there? But didn't you say that there was no express rejection under Section 365? So under the bankruptcy code, that's where you argued the consent provision, correct? I'm sorry. Okay, so you're saying that the executory contracts, which are governed by Section 365 of the bankruptcy code, right? That there was no rejection of these contracts. And so if there's no rejection, then they automatically end. So that's where you get your consent. That's correct, Your Honor. Thank you. And as I was saying with respect to the due process claims, and I know time is short, but if you look at all of them, you see situations where people were given notice on the day of, and then the water was shut off. Situations where people were provided with notice that the water was going to be cut off on one day, and it was cut off two days earlier. Situations where people were engaged in active disputes, trying to get some type of relief and justice in Memphis-like, where there was no opportunity for them to resolve those disputes. Water was shut off. Can I ask you a question? I'm just trying to find out how 904 works. As you can probably tell, we're interested in that. I mean, let's just say you're wrong about 904, that just by its terms, it just applies to all these claims, constitutional or not. Why is that so problematic? I mean, 904 just relates to bankruptcy judges. So why wouldn't an answer be, and it doesn't help this case, but it helps the next case. Why wouldn't the answer be, you can raise the claim in bankruptcy court. You can ask the bankruptcy judge for a recommendation as to how to resolve it, but ultimately, it's the district court judge that resolves these issues. I don't understand why that would undercut your client's concerns, because you'd still get a judge. You'd get an Article III judge, in fact, to decide whether there was a due process violation. Well, it's for precisely that reason that I continue to say that the issue here really goes to the reason that the case is before the court, which is the sufficiency of the pleadings. And whether it's an Article III court or whether it's in bankruptcy court, the question before the court is whether the pleadings are sufficient. And we say that they are. They are. Because if you look, even with respect to the equal protection claim. Okay, but you chose to file this in bankruptcy court. And what I'm suggesting is that's a problem with 904. And what I'm saying is not that many bad consequences will follow from that if next time around, you go to the district court judge for this exact relief. What's so bad about that? I mean, we have to decide this case, but I'm also trying to address the problems you're articulating that it seems like there ought to be a place to bring a constitutional claim. I'm suggesting what that place is, and I'm asking you why is that so problematic? It may or it may not be. But for the record, it is important to establish here and now that these pleadings are sufficient. Because whether they're filed in the bankruptcy court or whether they're filed in the district court, it is important to determine whether the motion which was brought before the court and which was decided based on insufficiency of the pleadings,  So you're saying that right now, that we're getting ahead, because we need to back up and just look at the standard, whether this meets the Twombly-Iqbal sufficiency standard. Exactly. That's the question we need to determine. Exactly. You're just on the constitutional claim. And you say that you disagree that the complaint is just filled with conclusory statements that there are sufficient plausible facts articulated that should allow your complaint to meet the Iqbal and Twombly standard. So I guess you need to tell us why it's not conclusory as one court looked at it. Well, that is precisely what I've been attempting to do. And we can go back and talk about the due process issue. As I said, Rosalynn Walker at paragraph 47 was given notice that shutoff would occur on June 14. Shutoff operations began on June 12. Inadequate notice of shutoffs. In the case of inadequate opportunities to contest shutoffs, paragraph 42 shows that Nicole Hill was being charged not only for water in her current residence, but also for a house she no longer occupied. Her water was shut off while she was engaged in a yearlong effort to try and talk to somebody about whether this was going to be, whether these bills were justified. Okay. And those are factual statements. But I want to take you back to the question that Judge Sutton asked you earlier. And he said that do all of the named plaintiffs, I mean, have all of the named plaintiffs received, you know, had their waters turned back on? So we have to look at whether or not this is even moot for us to decide that other issue. So what do you say to that? Does it matter if some of the named plaintiffs don't have their water turned on or if all of them still, I got that tangled up, but you understand what I'm saying. I do. And it doesn't for this reason. Because these are presented as class representatives. How many named plaintiffs are there? I believe there are ten. Ten. Okay. Do you know whether the ten are getting water now? I do not know as I stand here whether they are or not because their situations change from time to time because of the nature of their existence. And for the 12B6 analysis, does it matter? For the 12B6, does it matter? It does not because all that we're talking about here is whether the pleadings were sufficiently, whether the complaint was sufficiently pled. We're also talking about the relief that you requested in your pleadings. Even if they're factually sufficient under Trombley, my problem is, have you stated a claim upon which relief can be granted under 12B6 because you've asked exclusively for injunctive relief, which Section 904 appears to prohibit? Yes. So that's the legal question that is before us, 12B6, isn't it? Yes. What's your best authority that despite the language of the statute and the intent of Congress to prohibit the bankruptcy court from issuing injunctive relief, that the constitutional provision, not the federalism provision, but the other ones of equal protection and due process trump the statute? What's your best authority that that is how it works? Well, you had a question that I did not complete an answer to, which was whether this is still a viable claim. Well, it's not if you don't have a viable remedy pled, do you? But I'm trying to explain that we do. And the reason is that the question is whether these were sufficiently pled. It is presented as a class action, and they are presented as class representatives, which presumes that there are many people who are in their circumstances. So if, in fact, their claims as individuals have been mooted out, then their individual claims and whether they can continue as class representatives, whether they represent a class – those are issues to be resolved. I don't think you're answering his question. I don't have the complaint in front of me, but let's just say this is what it says. The relief we want is for the bankruptcy judge. It explicitly says we want the bankruptcy judge to turn this water back on. Let's just say that's all the complaint says. Judge Griffin's question is that 904 does not allow that relief. And if that hypothetically is the only relief sought, you've got a 12B6 problem. Well, Your Honor, I've answered the question with the only answer that I have, which is that as – whether – as to this being a case involving executory contracts, whether they're being consent and whether these cases being related to the bankruptcy all give the court jurisdiction to do the things that we've asked them to do. And that is my answer. That's a statutory construction argument that there is an exception to the statute. The more important issue is the constitutional issue, whether the constitutional provisions override the statute. And do you have any authority that they do? Ironically, Judge Rhoades in the bankruptcy court in this case, if nothing else, because he reached a – You have Judge Rhoades' opinion here. Okay, do you have any other authority than the bankruptcy opinion in this case? As I stand here, no, I don't, Your Honor. And that doesn't mean there isn't one that exists. He relies on Monell, which I don't think the analogy is apt. I think maybe a better analogy may be the habeas context of AEDPA, that Congress there, for the same concerns of federalism, restricted the power of the federal courts, even in constitutional areas, to not adjudicate constitutional claims if a decision was not clearly unreasonable. I mean, Congress has acted in other areas that have restricted constitutional rights because of federalism. And I don't really see you having any authority that this would be prohibited. Well, Your Honor, all that I can do is to request the opportunity to supplement the submissions with – There is no authority, is there, in support of your position? I'm sorry? There is no direct authority in support of your position? Your Honor, all I can ask is the opportunity to submit. All right. I think you'll get your full rebuttal. Let's hear from the other side, and you'll be able to respond to any of these questions you've already heard. It sounds like you've got some other thoughts, but the red light's been on for a while. I do, Your Honor, because I did not get to the issue of equal protection, which is very much a part of the challenge. Okay. Do you mind starting with the mootness issue? Just tell us – and again, if you're not prepared to answer, it's best to tell us that right out of the box because we can just ask for supplemental briefing. But I'm just struggling with why this – I mean, most people would think this bankruptcy case is over, right? The train's left the station. People are moving on, and here we have this follow-up case. So why is it still a live dispute? Thank you, Your Honor. Mark Swanson on behalf of the city of Detroit. As the bankruptcy court found on page 21 of its opinion, none of the plaintiffs are currently without water. And that opinion was issued approximately two years ago. None of the plaintiffs – that's referring to the ten named plaintiffs? On the issue, yes. None of the plaintiffs – none of the plaintiffs, I think that's clear. None of the named plaintiffs are currently without water service, although some did experience service interruptions in the past. Is it your position and your client's position the case is moot? I believe Your Honor's raised a very good issue, that if they're not without water, then the case is moot. But if it says none of the plaintiffs and it doesn't say none of the named plaintiffs, if this is a class case, can you narrowly limit that to the ten names? Does that mean that this situation of people who are similarly situated, they're none of those who no longer have water? Well, it was never certified as a class. So right now we just have ten plaintiffs, and as a bankruptcy court found, none of those plaintiffs are without water. Did you argue mootness below? We did not argue mootness. Okay, so it's not preserved. I know you didn't argue it in your brief, but does it go to our jurisdiction? I mean, if we don't have a live case or controversy? I think the court can always consider if something's constitutionally moot, because if it's constitutionally moot, then the court doesn't have jurisdiction in the first instance. And I believe there are six such cases. Should we do that in this case or not? I think you should. I think you should. It would be nice if you would have argued it, then. It seems to me problematic, though, because it seems like this could invite mischief. Say a case like this is filed, you have ten named plaintiffs who are in need of this relief. The city could very quickly undercut that by all of a sudden turning the water back on for those tenants. Case over, it's moot. And I'm not saying that happened in this case. Well, I guess, one, that didn't happen in this case. And second, I don't think that would undercut the mootness argument. Either there's a live case or controversy, or there's not. If the relief that they're requesting has already been provided, then there's no case or controversy, and therefore the case is moot. It seems like you're arguing now both sides of it. You're saying, well, it didn't happen in this case. This case is moot because all of these people have it, but it wouldn't necessarily be mooted if all of a sudden a case were filed and the city all of a sudden provided water to those ten. So that seems to be arguing two different things. Counsel, I don't know if I want to go down this road that much, but an exception to mootness is if the controversy is likely to reoccur and to avoid judicial review. And I think that's kind of what we're talking about. Couldn't the city just turn on water? Well, that would be the exception to mootness because it would be a controversy that would likely evade constitutional review. Does the city of Detroit still have the same policies now that they had that resulted in the termination of the water to the plaintiffs? The city, during the summer of 2014, drastically changed its policies. Okay, so the policy has been changed. So just to make sure I'm understanding the cause of the initial problem, did that grow out of the bankruptcy? So is it bankruptcy first, then water shutoff second? I'm not sure I understand the question. Well, I'm trying to get at how likely this is of repeating itself is what I'm trying to get at and understand. And my sense of the case is that it was the bankruptcy that triggered the initial policy. And I like to think that Detroit bankruptcies don't happen very often. In fact, city bankruptcies are almost unprecedented. So the question is how connected was the bankruptcy to the water shutoff? And I thought they were intimately connected. I think Your Honor is right. I mean, as part of the bankruptcy, the city was looking at it. So another question, though, that relates to mootness is one of the things they were challenging was putting in place a water affordability plan, one that paid attention to the income levels of the citizens and so forth. And the way that relates to mootness is whether the plan has changed or not. In other words, if the plan in existence when they sued is now a different plan, that supports mootness because we're now litigating something that's come and gone. If it's the exact same plan, that provides some support for the idea of let's go ahead and resolve it. I don't know which the answer is. The answer is that there were several new plans that were created on or around the time this lawsuit was filed. As the court may be aware, during the hearing on the plaintiff's request for a temporary restraining order, the city presented a substantial amount of testimony on the changes that were made, including the city's ten-point plan. And the ten-point plan was created, I believe just after this lawsuit was filed, to address affordability. So there's a different plan in place now than the one they challenged. That's correct, Your Honor. I think let's save the rest of mootness for briefing. Let's give them a chance. Well, go ahead. I was just going to say, at a minimum, we're going to give you a chance to brief both sides on mootness. Right. And the point I was going to make, and maybe this is not a question, but even that argument, doesn't that get us beyond the threshold question of whether or not the complaint that's drafted here meets the Iqbal-Twombly standard? Well, we don't believe the complaint meets the Iqbal-Twombly standard for a number of reasons. To begin with, we have Section 904 of the Bankruptcy Code, which prohibits us from even getting to the Iqbal-Twombly standard. And as Your Honors correctly noted, this is a very broad mandate, very, very broad mandate. And the Bankruptcy Court only carved out two pieces from this mandate. It said that it could consider equal protection. So why was it right about that? I'm trying to figure out how you come up with that distinction in 904. Well, this is how I read the Bankruptcy Court's reasoning. The Bankruptcy Court said, as noted, the plaintiffs seek a declaratory judgment that the city violated the Constitution, the equal protection, and the due process clauses of the U.S. Constitution. So I believe when the Bankruptcy Court was carving out these two claims, it was only with respect to the declaratory relief sought. But what the court did is it only considered Section 904.1. 904.1 provides that the court may not issue any order which would interfere with a governmental power of the city. And so what the court said is that it's not a governmental power if it's a constitutional violation, and thus 904.1 doesn't apply. But what the court didn't do, importantly, is look at Section 904.2 or 904.3. So 904 is structured, notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any state order or decree, in the case or otherwise, interfere with, one, any of the political or governmental powers of the debtor, two, any of the property or revenues of the debtor, or three, the debtor's use or enjoyment of any income-producing property. So the court, when the Bankruptcy Court made its ruling, it didn't consider Section 904.2 or Section 904.3. The city's position is that, of course, a declaratory judgment that the city was violating the Constitution, violating the Due Process Clause, violating the Equal Protection Clause, would interfere with the city's property or revenues. So is your position that Judge Rose had it right when he said there's a constitutional exception in 904, or did he have it wrong? We argued in front of the bankers. What's the answer today? I don't care what you did. Give me the answer. We argued and are arguing that 904 would prohibit any of the… Even constitutional claims? Even constitutional claims. Okay. So what's the answer to the problem, you know, just the egregious people of one race get water but people of another race don't? Is the answer that they go to district court and get an injunction that way and just challenge the action in that setting? Is that how this works, or do you still go through the Bankruptcy Court? The answer is the forum is not the Bankruptcy Court. You go to the district court, you could go to a state court forum, but you can't go to the Bankruptcy Court because 904 prohibits the Bankruptcy Court from ordering this release. Is there authority for the dichotomy we've just talked about? There are no cases which would support the position that constitutional claims are carved out from 904. I haven't seen any. There are plenty of cases which state that talk about the broad sweep of 904, although I don't think there are any which specifically address constitutional claims. But each court, each decision that I've read where a debtor made an argument that 904 prohibited the Bankruptcy Court's authority, they've won because it's so incredibly broad. No order, no stay, nor decree can interfere with any of the property or revenues of the debtor or any of the powers of the debtor. Does anyone say that in 904 what should happen is the bankruptcy . . . because this was a bankruptcy-related case, so in that sense it made sense for Judge Rhodes to have it. Does anyone say, well, what should happen is the judge shouldn't issue these kinds of relief, but he can make recommendations? Has anyone said that? I don't think anyone said that, and I think Your Honor is referring to the Stern-type claims that this court has encountered before. It's not the same claim, but I'm just saying it's a way of solving the problem. Yeah, no one has ever said that, but I think even a recommendation . . . no order, no stay, nor decree . . . I think a report and recommendation would rise to that level, and I don't think the bank . . . A report and recommendation counts as a stay, order, or decree? It has no power. Well, to the extent it has absolutely no power, then I suppose not. Is that requested in this case? It has not been requested. That's hypothetical. That is hypothetical. They could get damages. Could they get damages in this case? Not from the bankruptcy court. The bankruptcy court said basically the only thing I could do was enter a declaratory judgment. The bankruptcy court said I don't have any authority to do anything other than enter a declaratory judgment on these two counts, and our point is a declaratory judgment will interfere with the property or revenues of the debtor, or if it's completely ineffectual, then there's no case or controversy to begin with, right? So 904 would prohibit any of the relief sought by the plaintiffs, including the declaratory counts. I'm asking you for a little more candor than most lawyers provide, so if you don't want to do it, don't, but out of curiosity, if this case just went away today, what's your sense of either the named plaintiffs or the class members? What would they feel about the way Detroit's allocating water and making people pay for it? Do you think there would still be people that would want to sue? What's your sense of the extent to which there still would be complaints? Your Honor, answering with all candor, I don't have a good sense for that, other than to say that in response to this, the city implemented its ten-point plan and has made substantial efforts to reach out to people, and as the temporary restraining order transcript will show, the amount of water shutoffs, as soon as the city implemented this ten-point plan, they were cut in half. It made a lot of progress. There was a lot of attention given to this issue, a lot of money raised, and a lot of new programs that were implemented to help address this issue, and it's been an issue that the city cares deeply about. That's a benefit of calling it moot. But to the extent there still are people whose water is getting shut off, they'd have no reason to go to bankruptcy court at this point. They would clearly go to district court. They could. Right? I mean, that would be the only place you would go. There's not a bankrupt city, so you'd sue the city in federal court and this would all be gone. I believe that's correct. Judge Donald asked about whether there were claims or allegations which met the standard for equal entwembly, I think referring to the due process and the equal protection counts. And as the bankruptcy court found, as the district court affirmed, neither of those counts contain allegations which rise to the level needed to satisfy the Supreme Court standards in equal entwembly. And we have to remember that in equal entwembly, in the aftermath of equal entwembly, plaintiffs can no longer make conclusory legal allegations. They have to meet a plausibility standard. It's a plausibility standard. So are you saying that they don't meet that standard because of 904 or because of the phrasing of the various clauses in the complaint? The phrasing of the various clauses in the complaint. Now, what counsel read to us were pretty factual statements. Well, the complaint alleges little or nothing about what was provided to the plaintiffs in the bills and the shutoff notices. It's never been disputed that all of the plaintiffs received bills in this case, and it's never been disputed that the bills show the amount due, they show the due date, they describe the consequences for failing to pay the bill. So what you're saying is all summary judgment stuff. I mean, I think it's pretty easy to satisfy equal entwembly, plausibility, in a water cutoff case in your allegation to process. They say we didn't get notice, they have no right to do this, they're treating people that are poor worse than people that are rich. That claim gets beyond 12b-6, and they have a lot more than I just said. The difference here is that both the bankruptcy court and the district court viewed the bills which were incorporated by reference into the complaint and looked at what those bills showed. And the test here is whether the process that was afforded to the plaintiffs pursuant to the bills and the shutoff notices satisfied due process. And as this court and the Supreme Court has held, there's two requirements essentially for procedural due process. Notice, there's no question that there was notice here. You have a bill which shows the amount due, the due date, the consequences, the ability to dispute the bill, and you have... How about equal protection? Well... Can you resolve equal protection claims on the record? Sure. As this court has held and as others have held, the plaintiffs have to negative every conceivable basis which could support a rational basis here. The plaintiffs have not negative one basis, much less every basis. But tell me what differentiates the differential treatment between individual customers and commercial customers in terms of the shutoff procedures that the city employs? That's one of the arguments. Sure. There were a number of bases that were set forth by the bankruptcy court and district court. One about commercial customers having more complex service disconnections. For commercial customers, the service disconnections are much larger than they are for residential customers. But for a residential customer who's on dialysis, I mean, a service disconnection could mean death, right? So, I mean, it's all perspective. It is, but I don't believe that that point goes to equal protection. I mean, as this court knows, equal protection... Complex disruptions? Well, there's two points. One is, first, the plaintiffs have to compare themselves to similarly situated individuals. They did not compare themselves to similarly situated individuals. They compared themselves to businesses. As a district court found, there's never been a case which says on an equal protection claim, an individual can compare itself to a business or a business can compare itself to an individual to get by. In answer to Judge Donald's question, she gave you two options. She said one was plausibility of the equal protection due process claim. The other one was the relief sought, which is Judge Griffin's earlier question. Why are you not arguing that? In other words, it's implausible to get this relief given 904. Is that because you agree with the Judge Rhoades' constitutional exception decision, or what's wrong with Judge Griffin's point that it's implausible because you've only sought one type of relief, the bankruptcy judge stopping this, and 904 says no to that. That's legal. End of story. We agree with that. We also... That's not how you answered Judge Donald's question. I apologize. We agree with that point, and we also do not believe that the factual allegations in those two counts take away 904, throw it out the door for a second. We don't believe that the factual allegations in the due process count or the equal protection account rose to the level of meeting the standards of Iqbal and Twombly. So in equal protection, you have to have intent. How are they going to establish the intent without some discovery? Well, as part of the pleading stage, as this court has held, in Midkiff, in Bowers, and other cases, a plaintiff has a severe burden. These are 12B6 cases, Midkiff and Bowers, that were dismissed, and must negate all possible rational justifications for the difference. The plaintiffs, the only allegation we have in this case about rational basis was conclusory. It said there's no rational basis for the difference. The plaintiffs did not identify one conceivable basis for the difference, much less negative it. So we do not get past the clear pleading standards that a plaintiff, in a rational basis equal protection count, must negative all conceivable basis that could support the justification. It seems to me that a rational basis of its volition is going to be somewhat conclusive, because you're drawing a conclusion there about why it's not. But I want to go back to a different issue, because I think earlier, Judge Sutton asked your adversary about what policy is in place now that is likely to prevent these situations from happening again. I go back to that, because the Bankruptcy Code allows an environment in which the parties can come in and adjudicate these different things and make adjustments so that the debtor can emerge from bankruptcy free and in a better position to succeed going forward. The kind of thing that you don't want is to have a zillion of these different claims that are coming up that would really impede the debtor's progress. So here it seems like these claims either arise out of or are related to the bankruptcy. Counselor mentioned Section 365, and there's the state provision. So I want to know what policies are in place now that are likely to provide that these kinds of things won't recur. And I know that in the business you always have people who can't pay their bills and people who say, don't shut me off. But what is the policy now that is different than when the bankruptcy is going on that's likely to keep these from recurring? Certainly. And as a quick aside, on your executory contract point, as the bankruptcy court found, these are not executory contracts. When the city sends a bill and provides service, that's not an executory contract. That's just what Michigan law provides. If someone's willing to pay for the water, I'm going to provide them the water. So we dispute that there's any executory contract in this case. To the heart of your question, though, what has changed? And as part of the – that was one of the questions that the bankruptcy court asked the city, and the bankruptcy court had two days of testimony on that point because the plaintiffs filed a motion for a preliminary injunction. And what the city called witnesses at that hearing and went through with the bankruptcy court in great detail, its 10-point plan for addressing water shutoffs. And these included greater access to the water department, longer hours, cutting red tape. More plans were in place to help people pay for their bills. Prior to this case, a customer had to put down 30% of their bill to get into a payment plan. After, they only have to put 10% of their bill. But this 10-point plan is a thing that's changed. Yes, yeah, and it appears at record 38 page IDs. But it was not before the bankruptcy court. Oh, it was before the bankruptcy court. So it assessed the validity of the 10-point plan? It did. It called it bold, commendable, and necessarily aggressive. But I mean, I guess I'm just trying to make sure I'm following what happened here. The complaint didn't challenge the 10-point plan because the 10-point plan came later. That's correct. So just in terms of gathering evidence, the bankruptcy judge or the district court judge said, well, no need to worry because they've got this awesome new plan? Well, what the bankruptcy court said as part of its preliminary injunction hearing, it assessed the four traditional factors. And the city introduced evidence of what it was doing to address these issues as part of that hearing. Okay. I think we've heard you've gone well over your time. But thank you for answering our questions, which we always appreciate. Thank you. So, Mr. Fancher, you've got your full rebuttal time, and we'll give you some more time if need be. Thank you so much. First of all, I just wanted to quickly address the issue of mootness. One fact that has to be observed about the complaint itself is that in addition to these individual plaintiffs, there are also organizational plaintiffs. The Michigan Welfare Rights Organization, among others, continues to work with any number of people who are going through these same problems. Fact, these shutoffs are still continuing in the thousands. It is an active and ongoing problem for many, many poor people in this city. Fact, the 10-point plan is something, as the court observed, which is something that arose after. Wouldn't you agree with me if all that's true, and we're going to let briefing happen on the mootness, and if it's moot, what ends up happening is the lower court decisions get vacated. That's a benefit to you. And if, as you say, the current 10-point plan isn't working, and thousands of people's water is getting shut off unfairly, irrationally, and so forth, then you go straight to district court. 904 is done. We've simplified everything, and we happen to be challenging the current plan, which I'm struggling with why that's a problem. And the decisions you don't like have been vacated. It may or may not be a problem, Your Honor, but as I've said a number of times, we're stuck with what we have. When the potential defendant is in bankruptcy, you go to the bankruptcy court to sue them, which is what we did. And what brings this before the court is the 12B6 motion. And what has happened throughout the life of this case is a confusion between the pleadings and that particular motion and all kinds of other things that are happening. The 10-point plan has nothing to do with this litigation other than what advocacy groups and, you know, extra other things that have been going on outside of the court produced. It has nothing to do with it because it wasn't what was challenged. It was not, and it wasn't part of the litigation. It's something that was done as a stopgap measure, something that was done. That's not, that doesn't relate to the complaint that was made. And the other thing is that the court will— I'm struggling with why mootness is not your friend. I have to tell you, it seems to be your friend. You get rid of decisions you don't like. You get rid of 904, which places serious limits on the type of relief you sought. You now have litigation which shows what the vulnerabilities are about your equal protection due process claims. That allows you to write a new, fresh complaint to address them. And you go straight to district court where the main thing you want, you can get an injunction. As I said, Your Honor, it may or may not work to our benefit, but I'm stuck with the truth. And the truth is that I still have clients. No, you're not. You can say it's moot, and we think the lower court decision should be vacated, and we're going to file a complaint the day after that order is issued. You're not stuck with anything. And I'm trying to say it's beneficial to you, or at least explain to me why it's not. Your Honor, I have clients who are still working with people who are dealing with this, and I'm here not to negotiate a way to go forward procedurally, but to address the motion that's before the court, whether these pleadings are adequate. And they are. And I really do want to get to the issue of equal protection, because in this two-day hearing that the bankruptcy court conducted, at the end of it he said the following. Moreover, the court finds that there is a rational basis for the differing treatment. Some commercial customers have more complex service connections and therefore more complex disconnection procedures. That is the rationale that we have, because he made that finding. And we don't need to get into negativing all kinds of speculative reasons for why they did that. That's what has emerged from this case. The appellee has signed on to that. And we say that that is patently irrational. In Bauer v. Village of Mount Sterling, they did that. Is it rational to treat commercial different from residential? They are, and this is the reason why. Because the supposed reason for shutting people's water off is to promote payment, to make them somehow think that, okay, now I better pay to get the water shut back on, and to send a message to other people that they should do the same. What people may want to pay, but if they're poor, they may not be able to come up with that money. So the likelihood of getting a lot of money from these people is very slim. However, when you have corporate customers who owe tens of thousands of dollars, hundreds of thousands of dollars, and in the case of the state of Michigan, millions, and you're saying that because it's a little harder to turn off their water, you're not going to go after them? You go and cut off Chrysler's water for one day and see how much money that's going to generate immediately from the other corporate customers who are delinquent. But, you know, rational basis review doesn't, the way it works is it's not an inquiry to the facts and the truth. It's an inquiry into whether there's a plausible explanation for the distinction. That's it, plausible. And it's not plausible because for the utility to say that we're trying to get more money, but we're not going to get it from the people who can pay it and who will pay it if we do to them what we're doing to these residential customers. And when we're spending millions of dollars to try and cut off their water, we're getting nothing really, but we're getting nothing from them either. It is implausible. There are rare cases where the rationale is implausible. This is one. Are there any allegations of intentional discrimination based on race or anything else in this case? No, that's not part of the case. No disparate impact? No. This is based on, we concede that it's a rational relationship case, and we say that this is patently irrational, and it is. You know, the other thing that, you know, we do want to address is that, you know, as I mentioned, that the affordability plan is not at issue, and we really don't want, you know, those issues to be mixed in with this. This is a case where, you know, on a personal level, you know, I've asked the good Lord to help you to understand that we're talking about tens of thousands of people who are dealing with life and death situations. This is not a case where you're dealing with just one family or one person. You're talking about dialysis patients. You're talking about people who are extremely ill and disabled, people who are poor. They want to pay. They really want to pay. And all that they want is fairness. If you look at the interim rules and what it provides, it doesn't say that when we talk about or we consider ability to pay that we're going to give you a break on how much you pay. You're still going to pay the amount, but we're going to work it out so that you can pay over time or we can do something that's going to allow you to pay the full amount, and that's all that they want. Okay. Can I ask you one other question that has been raised before? The issue that you just raised, now that the bankruptcy is over and the debtor has emerged from bankruptcy, why couldn't those issues be raised and fully adjudicated and relief accorded in the district court? Your Honor, I'm not here to say whether those issues can or cannot be litigated in the district court. That's my question. Can't they be litigated there? They can be. These are issues that certainly could be litigated in either court. We were in the bankruptcy court because that's where the defense . . . That's a fair point. They're the ones that went bankrupt. You didn't make that happen, so that forced you in that form. Well, we appreciate both sets of arguments, all the briefs. I think we're going to talk among ourselves. To the extent we're still interested in mootness, I think what we'll do is ask for letter briefs about it. But we'll think about that first among the three of us and think through whether that makes sense. Obviously, nothing prohibits you if you have some insight about the mootness. It's an Article III question, so it's always relevant. But within a day or two, we should know whether we're going to ask for letter briefing on that. So you might wait a day or two before you do anything to see whether we have something to say about it. So anyway, we thank you both. It's a difficult case, and we appreciate the arguments. They've been very helpful, and thanks for answering our questions. And we thank you, Your Honor, for the extended time and the opportunity for us to . . . Absolutely. Thanks so much. The case will be submitted, and once lawyers have left, the clerk can call the next case.